Matter of ———— V————, a Child Under Seventeen Years of Age.

No. 46356.

Supreme Court of Missouri,
En Banc.

Nov. 12, 1957.

Paul H. Reis, St. Clair, Robert C. Frith, Chillicothe, for petitioner.

John M. Dalton, Atty. Gen., Robert R. Welborn, Harold L. Henry, Asst. Attys. Gen., for respondent.

HOLLINGSWORTH, Judge.

Habeas Corpus. The petitioners seek the release of their daughter, now aged 14 years, from the State Training School for Girls at Chillicothe, where she is held in custody pursuant to a judgment of the Magistrate Court of Franklin County, rendered on January 19, 1957, adjudging her to be a delinquent child within the meaning of the juvenile laws of this state and committing her to the State Board of Training Schools for an indeterminate time, not to exceed, however, her attainment of the age of twenty-one years.

It is alleged that the Magistrate Court was without jurisdiction of the subject matter or the person of the child and that she was denied due process of law. Issuance of the writ was waived. The return admitted custody of the child and pleaded the judgment as lawful authority for her detention. The issue to be determined turns upon the meaning and effect of the herein italicized portion of Article V, § 20, of the Constitution of Missouri, V.A.M.S., which provides:

"Until otherwise provided by law consistent with this constitution, the practice, procedure, administration and jurisdiction of magistrate courts, and appeals therefrom, shall be as now provided by law for justices of the peace; *and in counties of less than seventy thousand inhabitants magistrate courts shall have concurrent juvenile jurisdiction with the circuit court,* and the powers of the circuit judge in chambers when the circuit judge is absent from the county."

In 1945, the Legislature, as a part of its monumental task of implementing the portions of the Constitution it considered not to be self-executing, enacted a statute, Laws 1945, pp. 765–804, providing for the organization and administration of magistrate courts. Section 11 thereof, pp. 771–772, provided:

"Magistrate courts, in counties of less than 70,000 inhabitants, shall have concurrent juvenile jurisdiction with the circuit court, and the powers of the circuit judge in chambers when the circuit judge is absent from the county."

However, in 1947, Laws 1947, pp. 240–241, the Legislature, repenting of its haste in vesting magistrate courts with jurisdiction over juveniles coextensive with that of circuit courts, repealed the foregoing section and enacted a new Section 11, providing only that:

"Magistrate courts, in counties of less than seventy thousand inhabitants, shall have the powers of the circuit judge in chambers when the circuit judge is absent from the county." Section 482.130 RSMo 1949, V.A.M.S.

Since that time there has been no enactment of legislation implementing Article V, § 20, of the Constitution with respect to the exercise by them of any jurisdiction over any phase of the laws relating to "juveniles". To the contrary, the code in existence at the time of the adoption of the Constitution (and certain amendments as found in Chapter 211, RSMo 1949, V.A.

M.S.) relating to the treatment of neglected and delinquent children has been repealed and a comprehensive new and modernized code enacted in lieu thereof. See Laws 1957, pp. ——, ——. That code declares, Section 211.021(3), V.A.M.S.:

"'Juvenile court', means the Cape Girardeau court of common pleas and the circuit court of each county, except that in the judicial circuits having more than one judge, the term means the juvenile division of the circuit court of the county."

■ Is the portion of Article V, § 20, in question self-executing?

■ A constitutional provision is self-executing when it appears it was intended to have immediate effect and ancillary legislation is not necessary to the enjoyment of the right given or the enforcement of the duty imposed. When, however, general principles or powers are declared and specific legislation is contemplated or is necessary to make such principles or powers operative within the scope of their fair intendment and meaning, they are not and cannot be self-executing. State ex rel. City of Fulton v. Smith, 355 Mo. 27, 194 S.W.2d 302, 304; State ex rel. Millar v. Toberman, 360 Mo. 1101, 232 S.W.2d 904, 905–906; 11 Am.Jur., Constitutional Law, §§ 74, 75, pp. 691–694. And, obviously, if the provision is so vague as not to admit of an understanding of its intended scope, it cannot be self-executing. Scopes v. State of Tennessee, 154 Tenn. 105, 289 S.W. 363, 366, 53 A.L.R. 821. Especially is this true if to construe it to be self-executing would work confusion and mischief. State ex rel. Moore v. Toberman, 363 Mo. 245, 250 S.W.2d 701, 705.[1]

1. Prior to the adoption of the Constitution of 1945, and after a long period of trial and error in the evolution of the modern concept of the prevention of criminality in neglected and delinquent children, exclusive jurisdiction of the laws and procedure relating to that subject had been finally vested, it was thought, in the circuit courts and the Cape Girardeau court of common pleas. R.S.1939, Chapter 56, Articles 9 and 10. That code reflected the research that had begun at the turn of the century. Prior to that time there had been little, if any, effort directed to a scientific approach to the matter. Such law as there was consisted of a hodgepodge of statutes and decisions indiscriminately administered at all levels of the civil and criminal courts. However, a study conducted under the sponsorship of the Chicago Bar Association in 1899 resulted in the enactment of one of the first comprehensive statutes creating a juvenile court and a special code of procedure for its administration. That statute vested exclusive jurisdiction of juvenile matters in the Illinois equivalent of our circuit court. As a result of that report and the successful administration of those and similar statutes, the treatment of neglected and delinquent children has become universally recognized as a specialized field requiring for its effective administration the services of judges and investigative agencies devoted to and skilled in the prevention of delinquency and criminality in children. Justices of the peace and police and magistrate courts gradually have been divested of jurisdiction over such children until such jurisdiction now is almost exclusively vested in circuit courts or special courts of an equivalent level. Washington University Law Quarterly, Vol. 1957, No. 1, p. 17 et seq.; Ex parte Loving, 178 Mo. 194, 77 S.W. 508.

A brochure titled "Standards for Specialized Courts Dealing with Children", published in 1954, by Children's Bureau, U. S. Department of Health, Education and Welfare, in cooperation with the National Probation and Parole Association and the National Council of Juvenile Court Judges, considers at length the question of which courts can more effectively administer the complex problem of neglected and delinquent children, and arrives at the following conclusion: "Basic to any plan, however, are the questions of the status and size of the court and of integrating the work of the courts throughout the State. Although the court that handles children's cases is seldom called upon to adjudicate issues involving great sums of money, it does determine issues which have lasting effect upon the lives of children and families. Because of this it is as important as any court in the State, and should be given status which will command the respect

■ The first clause of Article V, § 20, in unmistakable terms not only defines in specific detail the jurisdiction of the newly created magistrate courts insofar as their jurisdiction would supersede that formerly exercised by justices of the peace, but it goes further and directs that until the Legislature otherwise provides such jurisdiction shall be exercised and administered according to the existing laws regulating the practice and procedure of justice courts. Thus, there appears a clearly expressed intention to make that provision immediately self-executing.

■ Not so phrased, however, is the clause with which we are concerned. That clause, while purporting to vest in the newly created magistrate courts "concurrent juvenile jurisdiction with the circuit court", makes no provision, by reference or otherwise, for rules of practice, procedure or administration by which its jurisdiction in that respect shall be exercised. Neither does it declare whether the *"concurrent"* jurisdiction of magistrate courts shall be co-extensive with that of the circuit courts and common pleas court so as automatically to vest magistrate courts with all phases of "juvenile jurisdiction" which heretofore have been or hereafter may be vested in the latter courts; nor does it fix or define the scope and meaning attached to the term "juvenile jurisdiction". The extent to which the provision is meant to apply in that respect is of grave moment. The jurisdiction of magistrate courts (successors to justice of the peace courts) in criminal cases is now and traditionally has been limited to misdemeanors and preliminary examinations in felony cases, while circuit courts now have and traditionally have had concurrent jurisdiction of misdemeanors and exclusive jurisdiction of felonies. If, however, by virtue of the provision in question magistrate courts are to be vested with concurrent jurisdiction in the administration of the laws relating to juvenile delinquency the most unusual possibilities will flow from it.

For instance: Once a magistrate court has taken jurisdiction of a child as a delinquent juvenile and made it a ward of the court, it may cause such child to be committed to state custody until it becomes 21 years of age, however trivial the offense may have been; or, if the magistrate court assumes jurisdiction of a juvenile charged with murder, rape, arson or other felony, the circuit court will be deprived of its traditional exclusive jurisdiction over the subject matter and person of the offender.

And further: Does the provision contemplate that magistrate courts shall have jurisdiction concurrent with that of the juvenile division of circuit courts in the administration of the laws relating to adoption of children as set forth in Chapter 453, RSMo 1949, V.A.M.S.? A study of the adoption code shows that its present provisions could not effectively be administered in accord with their fair intent and meaning by such courts. Does it contemplate that magistrate courts shall have concurrent jurisdiction with circuit courts to administer the statute relating to "Interstate Compact on Juveniles", as set forth in Sections 210.570 to 210.600, V.A.M.S.? A reading of those sections shows that it could not effectively do so. Did it contemplate that the magistrate courts should have concurrent jurisdiction with that of the juvenile division of the circuit courts to administer the laws relating to the treatment of neglected and delinquent children, as were in effect when the Constitution was adopted, Articles 9 and 10, Chap. 56, R.S.1939? A reading of those sections shows that they would have required extensive change before

of the community and of persons coming before it. It should be a court of record and of comparable status to the court having general civil jurisdiction. Jurisdiction over children's cases should not be the responsibility of justices of the peace, magistrates or city court judges having inferior jurisdiction or clerks of court acting ex officio. These courts are generally not equipped either psychologically or materially for this type of work."

their true intent and meaning could have been effectively administered by the magistrate courts.

It is apparent that the provision furnishes no guide as to the extent magistrate courts shall exercise such jurisdiction. The abortive attempt in 1945 to implement it by the simple enactment of the terminology of the provision itself, the prompt repeal of that attempt in 1947, and the abandonment of future attempts to implement it bespeak the Legislature's belief that the provision is impossible of self-execution and that to construe it to vest magistrate courts with concurrent "juvenile jurisdiction" co-extensive with that of circuit courts would result in irreparable confusion and mischief.

The construction placed by the Legislature and Governor on a constitutional provision by the enactment of a statute, although not binding on the court, is persuasive, Gantt v. Brown, 244 Mo. 271, 149 S.W. 644, 645–646, and where the meaning of the provision is doubtful or its terms ambiguous the construction given it by the Legislature is entitled to great weight and should not be departed from unless manifestly erroneous. Folk v. City of St. Louis, 250 Mo. 116, 157 S.W. 71, 76; State ex rel. O'Connor v. Riedel, 329 Mo. 616, 46 S.W. 2d 131, 134.

We are forced to the conclusion that the meaning and intended scope of the provision in question is so indefinite as to render it impossible of execution without specific legislative definition of its precise jurisdiction of juvenile matters and implementation of its trial and appellate procedure and its administration. It follows that the judgment of the magistrate court under which the juvenile is restrained of her liberty is void. It is ordered that she be forthwith discharged.

All concur.