**In the matter of Thomas Franklin WALTER, a Minor Under the Age of Eighteen Years.**

**STATE of North Dakota, Plaintiff and Respondent,**

**v.**

**Thomas Franklin WALTER, Defendant and Appellant.**

**In the matter of Michael Steven EHRLICH, a Minor Under the Age of Eighteen Years.**

**STATE of North Dakota, Plaintiff and Respondent,**

**v.**

**Michael Steven EHRLICH, Defendant and Appellant.**

Crim. Nos. 383, 384.

Supreme Court of North Dakota.

Nov. 25, 1969.

Helgi Johanneson, Atty. Gen., Bismarck, and Lester Schirado, State's Atty., Mandan, for the State.

Vogel, Bair & Graff, Mandan, for defendant and appellant, Thomas Franklin Walter.

C. J. Schauss, Mandan, for defendant and appellant, Michael Steven Ehrlich.

TEIGEN, Chief Justice.

We are involved here with two appeals under Chapter 27–16, N.D.C.C., which provides that appeals may be taken from Juvenile Court orders determining and adjudging the transfer of care, custody and control of delinquent children. Both appeals are disposed of in this opinion.

The two boys in these titles were sixteen and seventeen years old, and both were found delinquent because, jointly, they had committed violations of State law by committing grand larceny. No issue is raised on their appeals nor in the proceedings below with respect to the finding of delinquency. Delinquency is admitted. No issue is raised as to the accusatory stages in the respective proceedings.

The issue raised on these appeals involves the disposition stage of the proceedings in the Juvenile Court. Both boys were committed to the State Industrial School by the Juvenile Court, and the contention is made on these appeals that such disposition was not justified under the evidence in either case.

These proceedings were held under the provisions of Chapter 27–16, N.D.C.C., which was in effect prior to the effective date of the Uniform Juvenile Court Act, codified as Chapter 27–20 and contained in the 1969 pocket supplement to the North Dakota Century Code. An appeal taken under either Act is triable anew in this court.

The question of disposition in juvenile proceedings has been considered by this court in several cases. In State v. Smith, 75 N.D. 29, 25 N.W.2d 270, this court held:

"Where it is shown that the minor is a delinquent child, and that the parent having his custody is unfit to have charge of his training, upbringing and person, the court may commit him to the state training school for discipline, training and control, where there is nothing in the record to show any other alternative."

In Hardy v. Cunningham (N.D.), 167 N.W.2d 508, we held:

"In juvenile proceedings the order with respect to custody shall be made solely upon the consideration of the welfare of the juvenile and the good of the State."

In discussing the problem this court, in State v. Myers, 74 N.D. 297, 22 N.W.2d 199, stated:

"We realize that proper disposition of cases of juvenile delinquency requires a delicate balancing of mixed considerations and that even the most careful weighing of pertinent factors can only result in conclusions that are speculative to the extent that they attempt to predict the course of future events. Confidence that a correct conclusion has been reached must of necessity rest upon hope founded in experience, rather than on certainty. We think therefore that the

problem should be approached in a spirit of optimism and that drastic remedies should not be invoked where we can have reasonable hope that lesser ones will have an equal if not a complete success.

"What then are the factors to be considered and what relative weight is to be given to each? To what extent is the welfare of an individual delinquent to be counterbalanced by the good of the state? In one sense, a decision, which will help quiet public indignation over a scandalous condition which has arisen in a community, or which, because of its severity, will act as a forbidding example to other youngsters, may be said to be for the good of the state. But we do not think that, as used in the juvenile act, the phrase can be given such a broad interpretation. Considerations of expediency, the satisfaction of public indignation, or example are contrary to the whole spirit of the juvenile act. They are dependent on publicity to be effective for any purpose and all proceedings in juvenile court are declared by statute to be 'confidential'. Section 27–1606, R.C. 1943. We therefore hold that the good of the State requires a child to be removed from a community only when his delinquency is such that he has become a danger to society either because of his own conduct or his influence upon others."

■ The decisions harmonize with the statute which allows the Juvenile Court a wide latitude in making disposition. Section 27–16–21, N.D.C.C.

The Juvenile Court, in its findings, found both boys to be delinquents and that it was for their best interests and the State's best interests that each be committed to the State Industrial School until each reaches his majority, with a recommendation for earlier discharge under described circumstances.

We shall now consider· the question in light of our rulings and the statutes: Were the orders committing these two boys to the State Industrial School for their respective best interests and for the best interests of the State of North Dakota?

The evidence indicates that both juveniles turned themselves in to the police, admitting their part in the offense, the day after the offense was committed. All of the stolen merchandise was returned, except for a pair of gloves and a screwdriver. Restitution for any damage to the stolen goods has been arranged to the satisfaction of all parties involved.

At the juvenile hearing both boys testified, a parent of each of the boys testified, and their respective pastors testified. The Juvenile Commissioner and the State's Attorney also gave their recommendations.

The testimony at the hearing indicated that both boys acknowledged they had done wrong, each showed remorse, and each expressed the resolve to avoid such conduct in the future. The testimony further revealed that neither boy had been in trouble before except that one of the boys had received a traffic ticket for riding as a passenger on a motorcycle without a helmet; both were good students at the high school and both intended to attend college after high school. Both pastors testified that the boys were from good families, and expressed their willingness to sponsor the youths if probation were granted and assist in their rehabilitation in every way possible.

The family situation in both cases indicates that the boys had not been a discipline problem for their parents. In the present case there is no evidence that either of the boys involved was in need of treatment or rehabilitation other than that which he could receive in the family home. In fact, the evidence is to the contrary. All of the evidence indicates that the boys can, and will be, rehabilitated in their own homes if given the opportunity.

The written recommendations of the State's Attorney, in both cases, are as follows:

"1. Defendant is a good student and amenable to vested authority.

"2. This is the first criminal charge against the defendant.

"3. Restitution can and will be made.

"4. Rehabilitation could best be achieved in a home, familial, societal environment.

"5. Defendant has not established a criminal behavioral syndrome.

"6. One (1) year deferred imposition of sentence is recommended, as rehabilitation, in all probability, would be best achieved in a familial, *conselled* environment, rather than an institutional situation."

The Juvenile Commissioner strongly recommended probation:

"These boys, I feel, as I mentioned when I first started, have many, many things going for them. They are 'B' and 'A' students, they are active in community affairs, they are active in school affairs, and they are no discipline problem. They have no prior record, as far as my office is concerned, with the exception of one prior, minor traffic situation. They are cooperative, they are not belligerent; and they are actually real good candidates, I feel, to become productive members of society.

"In light of all I have said, I would recommend probationary status rather than committment to the State Industrial School." Transcript, p. 108.

We think it is clear from the record that the lower court has failed to follow the guidelines set out in previous decisions by this court, *supra*. Recommendations for probation were made by the State's Attorney, the Juvenile Commissioner, and the two ministers. No one at the hearing recommended confinement in the Industrial School.

The lower court's decision is based on the premise that it "will help quiet public indignation over a scandalous condition which has arisen in a community, or which because of its severity, will act as a forbidding example to other youngsters * * *." We said, in State v. Myers, *supra,* that this is not a factor to be taken into consideration in determining disposition in a juvenile case.

■ The good of the State requires a child to be removed from a community only when his delinquency is such that he has become a danger to society either because of his own conduct or his influence upon others. There is no indication, unless one indulges in the exact opposite of the "spirit of optimism" which this court has directed to be used, that these boys will ever again be a danger to society.

■ The lower court's attitude of satisfaction of public indignation, and its intent to set an example for purposes of deterrence, have resulted in a disregard of the intent of the statute which is characterized by its confidential proceedings and its concern with the welfare of the individual delinquent. The lower court was in error in giving the statute the broad interpretation which this court has refused to give it.

■ The orders committing these boys to the State Industrial School are, therefore, reversed and the two cases are remanded to the Juvenile Court of Morton County for the entry of appropriate orders in accordance with the philosophy of the law as expressed in this opinion.

STRUTZ, ERICKSTAD, PAULSON and KNUDSON, JJ., concur.