In the Interest of G_____ D_____ G_____,
a child under seventeen years of
age, Appellant.

No. 25869.

Missouri Court of Appeals,
Kansas City District.

Sept. 7, 1972.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Oct. 2, 1972.

Richard J. Habiger, The Legal Aid and Defender Society of Greater Kansas City, Kansas City, for appellant; Craig E. Miller, National Juvenile Law Center, St. Louis, of counsel.

Judith J. Paxton, Asst. Pros. Atty., Kansas City, for respondent.

PRITCHARD, Judge.

The basic question is whether the respondent, Juvenile Division of the Jackson County Circuit Court, abused its discretion in committing appellant to the State Training School for Boys at Boonville, Missouri.

The history of the case is this: After a detention order of June 7, 1971, the Juvenile Officer filed a petition on June 24, 1971, in three counts alleging that appellant did unlawfully and knowingly assault one James A. Stevenson by hitting him in the face with his fist; robbery with a dangerous and deadly weapon of one Helen Faris; and wilful and malicious destruction of monuments and tombstones within Mount Washington Cemetery. The court upon hearing with appellant, his mother and counsel present, found that appellant was in need of care and services of the court in that he did, acting alone or knowingly in concert with others, assault James

A. Stevenson by hitting in the face with his fist. The petition was sustained as to the assault count, appellant by counsel having pleaded guilty [really an admission] thereto, and the robbery and malicious destruction counts were dismissed by the court.

Appellant was examined by his counsel. He testified that he was 16 years old, and got through school to the middle of his ninth (Freshman) year. He knew and understood the allegation of assault; he could read and write, and stated himself that he was pleading guilty to the allegations in Count I. "Q. All right. You plead guilty, knowing that you have the right to a trial, you have the right to remain silent, you have a right to plead not guilty? A. Yes, sir. Q. All right. You enter this plea knowing that you run the risk of going to Boonville? A. Yes, I do. Q. And you are still willing to enter your plea of guilty? A. Yes, sir. Q. All right. Are you under the influence of any alcoholic beverages or drugs at this time? A. Yes, I was. Q. At this time? A. At this time, no, sir. Q. All right. Please state very briefly to the Court what occurred in relation to Count I, that is, the assault on Mr. Stephenson [Stevenson]? A. I walked into the laundromat, and walked up to this man who was sweeping the floor, and I asked him if he had any change, and I heard a bang or a scream or something, and he turned around and I hit him and I ran. Q. All right. Were you under the influence of drugs at that time? A. Yes, I was. Q. What was that drug? A. Glue."

Appellant, upon interrogation by the court, stated that he had a chance to discuss his plea with his parent and sister and with his attorney, who fully advised him of his rights, and that it was not necessary to have any further discussion with counsel before proceeding further. Appellant understood that if the court accepted his plea the only thing left for it to do was to impose sentence. No one made appellant any promises of any kind as to what the court might or would do, and no one induced him in any fashion to plead guilty other than for the reason he was guilty. The court then accepted the plea, and the case was deferred to the following Monday for disposition. Without objection the juvenile court file was received in evidence.

For the state, Deputy Juvenile Officer Ron Crosley testified that appellant's first arrest was on June 17, 1970, for a curfew violation, disorderly conduct and trespassing, these being handled by the Independence Police Department. Also in 1970, appellant was arrested by the Kansas City Police Department for trespassing. [Note that evidence of arrests in this record would not be sufficient to sustain a finding of jurisdiction of the juvenile court.] He dropped his attendance at the Nowlin Junior High School in April, 1971, poor attendance at school starting in 1969 after the death of appellant's father, which may have caused a very strong emotional reaction within him. According to a seventh grade teacher, appellant had been a very polite and sensitive boy. Prior to the incident for which appellant pleaded guilty, there was a breakdown in adult supervision in the family. Because of the serious charge, in which injury was sustained by another person, Crosley thought that there was an obligation of the court to commit him to the training school, but because the family was reunited and there would be full-time supervision of him by his mother, Crosley thought that appellant should be placed on probation in the custody of his mother under the direction of a deputy juvenile officer. He had never been arrested for a felony in the past; he had been polite and sincere in Crosley's numerous associations with him; he was willing to go by any form of probation agreement; he would have full-time employment at a service station, all of which made appellant a likely candidate for probation.

Appellant's mother testified that at the time of his offenses he was not living with

her. She had remarried, divorced, and received back her old name. At the time of hearing she resided on East 24th Street, and if appellant were placed on probation he would live with her. She was not working and would be able to provide full-time supervision of him. Appellant told her he wanted to go back to school. He expressed to her his feelings that he knew what he did was wrong and wanted to straighten himself out.

Appellant further testified that while in detention he wrote a letter to his younger brother in which he expressed regret at having been in trouble. At the time he was arrested he might have told the officer it was his idea to push over the headstones at the cemetery, "but that isn't what I meant." "Q. Whose idea was it to push over the headstones? A. Actually, it was Danny's idea." Appellant admitted pushing over the headstones, but said that he was a follower rather than a leader, as was the case involving the robbery. He took part in the discussions as to the robbery, but did not want to rob someone. He tried to dissuade the others from perpetrating a robbery, but it did not seem to do much good. Because he knew he did wrong, appellant testified that he intended to make restitution for the graveyard damages if he got the job.

In committing appellant to the State Training School for Boys, the court stated that since acceptance of the plea of guilty, it had had a chance to review his record. The court took note that appellant had a curfew violation, disorderly conduct, trespassing, and pleaded guilty to the charge of striking an older man which caused serious injury to him. The court noted the evidence that appellant took part in tipping over the gravestones, and concluded that appellant had gone from bad to worse. As to the damage to the headstones, there was a report of Harold D. Taylor, Sergeant in the Youth Unit, Independence Police Department in the juvenile court file (which was admitted into evidence) containing this statement: "Mr. H. M. Dunning, caretaker for the cemetery advised this officer the damage to the tombstones and cemetery would be between $1500.00 and $2000.00."

As a general statement, appellant's Point I contention that the juvenile court's discretion to institutionalize a child is not unlimited is true. The consideration in making the determination of commitment is whether, *under the evidence*, the court abused its discretion in applying the two basic guides of Section 211.011, RSMo 1969, V.A.M.S., that the disposition "will conduce to the child's welfare and the best interests of the state." Each case in which the exercise of the court's discretion is at issue must turn upon its own facts. Here the evidence was that appellant's antisocial and delinquent conduct had continued since 1969. The prior cumulative acts, considered as a whole, were not trivial in nature. The act of assault upon an elderly man to which appellant pleaded guilty was brutal, causing him to become unconscious and to require removal from the scene by ambulance. To be distinguished is appellant's case of In re Walter, N.D., 172 N.W.2d 603. There the two juveniles turned themselves in to the police, admitting grand larceny and most of the stolen property was returned and restitution was made for damaged goods. The offense was a first one. There had been no disciplinary problem of the juveniles to their parents. Both had been good students, and all of the facts indicated that a probationary status in a family counselled environment would be effective for rehabilitation. Importantly, in Walter, was the premise of the trial court's decision, of commitment to the State Industrial School that "it 'will help quiet public indignation over a scandalous condition which has arisen in a community, or which because of its severity, will act as a forbidding example to other youngsters * * *'", said not to be under State v. Myers, 74 N.D. 297, 22 N.W.2d 199 a factor to be taken into consid-

eration in determining disposition in a juvenile case.

■ It is clear here that the trial court did not solely consider the "best interests of the state". It had all the facts and the concerned parties before it. Appellant's history of truancy, disorderly conduct, trespassing, vandalism, being involved in a robbery, and the assault upon the elderly man, all of which the court could consider, was a sufficient basis for the court to commit appellant to the training school in *his* interest and welfare, as against the urged proposition that he preferably be given care within his own home.

Other cases cited by appellant, In re Hamill, 10 Md.App. 586, 271 A.2d 762; In re Fletcher, 251 Md. 520, 248 A.2d 364; In re Johnson, 254 Md. 517, 255 A.2d 419; Mosquin v. State, 216 Md. 524, 140 A.2d 914, speak of the underlying philosophy and basic standards of fairness of and required by juvenile courts and their procedures. None have the issue of discretion of a trial court in the disposition of a child. In re Arnold, 12 Md.App. 384, 278 A.2d 658, did involve an abuse of discretion of the trial court in ignoring a probation officer's recommendation. The court here did consider the deputy juvenile officer's recommendation, which is in the record, but it was not required to follow that recommendation.

■ Respondent suggests that this case is moot because appellant was released on parole under the supervision of the Board of State Training Schools. Since appellant's parole could be revoked under Section 219.250, RSMo 1969, V.A.M.S., his appeal is not moot, Boone v. Danforth, Banc Mo., 463 S.W.2d 825, 827 [2], and the case may be disposed of here.

The judgment is affirmed.

All concur.