**STATE of Missouri at the relation of T. J. H., pro ami, Relator,**

v.

**The Honorable C. Patrick BILLS, Judge of the Magistrate Court of Clay County, Missouri, Respondent.**

No. KCD 26291.

Missouri Court of Appeals, Kansas City District.

May 7, 1973.

Richard J. Habiger, T. E. Lauer, Director, National Juvenile Law Center, St. Louis, for relator.

Before DIXON, C. J., and SHANGLER, PRITCHARD, SWOFFORD and WASSERSTROM, JJ.

SHANGLER, Judge.

In this original proceeding in prohibition the juvenile relator seeks our rule to prevent the respondent magistrate from the exercise of an unlawful jurisdiction in criminal causes wherein relator stands accused of possession and sale of marijuana. The petition alleges that the adjudication under § 211.071, RSMo 1969, whereby the juvenile court relinquished jurisdiction to the general law, and thus to the magistrate, does not comport with due process in particulars and that the statute itself is constitutionally infirm because lacking standards for that purpose. Accordingly, relator seeks the discontinuance of the prosecutions pending before the respondent and seeks also to be restored to the exclusive jurisdiction of the juvenile court.

■ This proceeding is a sequel to In Re T. J. H., 479 S.W.2d 433 (Mo. banc 1972), wherein relator was appellant, an opinion respondent contends precludes our jurisdiction here. In Re T. J. H. determined that the order of the juvenile court relinquishing jurisdiction to deal with the child under the Juvenile Act was not a final appealable order and that the proper method of review was by a motion in the circuit court to dismiss the information or indictment under Rule 25.06, V.A.M.R.[1].

This is the law of the case by which we are bound. Butcher v. Main, 426 S.W.2d 356, 358 [2] (Mo.1968). Since the denial of a Rule 25.06 motion is not a final order from which an appeal may be taken (Evans v. Barham, 184 S.W.2d 424 [2] (Mo. 1944), a necessary implication of the In Re T. J. H. holding is that appellate review of a juvenile court waiver order is deferred until the primary issue of guilt has been determined by the criminal law.

From this, respondent asserts in his motion to dismiss that In Re T. J. H. discountenances any form of interlocutory review of the waiver order, whether by ordinary appellate process or by extraordinary writ. This contention, however, is not justified by the law of the case. In dismissing that appeal, the Supreme Court neither identified the legal basis asserted for the appeal, nor ruled it, nor precluded resort by the appellant (this relator) to extraordinary remedy.

■ The issuance of a writ of prohibition is not an appellate process. A proceeding in prohibition is distinct and independent of the original action. It is substantially a proceeding between two judicial authorities, a superior and an inferior, and is a means by which the superior judicial authority exercises its superintendence over the inferior authority to keep it within the bounds of its lawful jurisdiction. State ex rel. City of Mansfield v. Crain, 301 S.W.2d 415, 418 [1] (Mo.App.1957); State ex rel. Boll v. Weinstein, 365 Mo. 1179, 295 S.W.2d 62, 67 [10–13] (banc 1956); High's Extraordinary Legal Remedies (3rd ed.), p. 715. This concept of ordered exercise of jurisdiction, so dominant in the common law, has been adopted into our constitution (Mo.Const. Art. V, § 4) and laws (Chapter 530, RSMo 1969) as the primary means by which this court may

---

1. The "review" available under Rule 25.06 is not appellate review in any sense commonly understood. Contentions of trial error—such as that the juvenile court waiver order was not supported by suf- ficient evidence—are not within the scope of the rule. Nor is an order overruling a motion to dismiss under the rule itself a final appealable order. Evans v. Barham, 184 S.W.2d 424[2] (Mo.1944).

exercise its superintendent control over the inferior courts. State ex rel. Boll v. Weinstein, *supra*, 1. c. 67 [10–13]; 73 C.J. S., Prohibition, § 2.

A prohibition will not issue to correct the error of a court of conceded jurisdiction where the remedy by appeal is adequate. State ex rel. Berbiglia, Inc. v. Randall, 423 S.W.2d 765, 770 [8–10] (Mo. banc 1968); Rule 84.22. Where there is an entire lack of jurisdiction over the subject matter of the action or over the person of the defendant, relief by prohibition will be granted in order to secure regularity in judicial proceedings. State ex rel. Boll v. Weinstein, *supra,* 295 S.W.2d 1. c. 67 [10]; State ex rel. Warde et al. v. McQuillin, 262 Mo. 256, 171 S.W. 72, 74 [2] (1914); State ex rel. Judah v. Fort, 210 Mo. 512, 109 S.W. 737 (banc 1908). In consonance with these basic principles, a prohibition will issue to prevent an inferior court from acting in a proceeding of which another inferior court has exclusive jurisdiction. State ex rel. Lipic v. Flynn, 358 Mo. 429, 215 S.W.2d 446, 451 [7] (banc 1948); State ex rel. Walker v. Murphy, 132 Mo. 382, 33 S.W. 1136 (1896). And, in all events, a prohibition does not issue *ex debito justitiae,* but only in the discretion of the court. State ex rel. McCaffery v. Aloe, 152 Mo. 466, 54 S.W. 494, 498 (1899).

Our provisional rule in prohibition issued upon relator's petition, and presumptive proofs, that the order of the juvenile court relinquishing jurisdiction of relator *to the general law* under § 211.071 was void on its face as a matter of law because it gave no statement of reasons for that determination, in violation of due process requirements of the United States Supreme Court and of the Missouri Supreme Court. In consequence of the invalid waiver order, the petition further asserts, the juvenile relator remains within the exclusive jurisdiction of the juvenile court and is not amenable to the respondent magistrate's criminal process. Thus, relator asserts that respondent lacks jurisdiction in the most fundamental sense, that because relator remains within the exclusive jurisdiction of the juvenile court, the conduct alleged against him is not a matter of cognizance for the criminal law and therefore respondent magistrate has no power to adjudicate the felony complaints nor to bind relator to that determination. §§ 211.031 and 211.091, RSMo 1969; In re V ———, 306 S.W.2d 461 (Mo. banc 1957). In Re T. J. H. does not propose that the remedy of prohibition be withheld from a petitioner upon such a showing nor that this court exercise any less assiduously its constitutional function of superintendence over courts subordinated to its judisdiction.

The relator contends that § 211.-071, RSMo 1969[2] violates constitutional due process and is void for vagueness in that it provides no standards as to when a juvenile is not "a proper subject" to be dealt with under the juvenile act and, thus, the juvenile court order entered under its provisions is void and imparts no jurisdiction to a criminal court for prosecution under the general law. This precise contention has been considered and rejected by two recent decisions of the Missouri Supreme Court. In State v. Williams, 473 S. W.2d 382 (Mo.1971), the court noted first that the juvenile law is integral and each section must be construed in terms of the others. The court then determined that the provisions of the juvenile law, including § 211.071 which prescribes the waiver

---

2. "In the discretion of the judge of the juvenile court, when any petition under sections 211.011 to 211.431 alleges that a child of the age of fourteen years or older has committed an offense which would be a felony if committed by an adult, * * * the petition may be dismissed and such child * * * may be prosecuted under the general law, whenever the judge after receiving the report of the investigation required by sections 211.011 to 211.431 and hearing evidence finds that such child * * * is not a proper subject to be dealt with" under the provisions of the juvenile law.

procedure and § 211.011 which declares the purpose of the juvenile law, are expressed in terms of common understanding, and that when construed together an explicit statutory standard for waiver appears: A child may be determined by the juvenile court judge not a proper subject to be dealt with under the juvenile law if, after receiving an investigation report and hearing evidence, it reasonably appears that the continued exercise of such jurisdiction will not "facilitate (the child's) care, protection and discipline . . . and . . . (provide him) such care, guidance and control, preferably in his own home, as will conduce to the child's welfare and the best interests of the state". § 211.011. Then in Coney v. State, 491 S.W.2d 501 (Mo.1973), the Supreme Court determined the same rationale for §§ 211.071 and 211.-011, without reference to *Williams,* and also rejected the constitutional argument relator raises here. An earlier decision of the Supreme Court had articulated, more tersely, an equivalent standard for waiver under § 211.071: "The ultimate purpose of the transfer of a juvenile . . . is to protect the *public* in those cases where rehabilitation appears impossible." State ex rel. Arbeiter v. Reagan, 427 S.W.2d 371, 377 [4] (Mo. banc 1968).

The other serious contention raised by relator is that the waiver order of the juvenile court is void and cannot confer jurisdiction on respondent because it contains no statement of reasons for the waiver, thereby denying the juvenile fundamental fairness and due process of law. The constitutional principle relator asserts is that announced by the United States Supreme Court in Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966) and reaffirmed in In Re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). *Kent* arose from procedures applicable to the District of Columbia Juvenile Court. In its opinion, the court observed that the statutory scheme under consideration, much like our own, conferred special rights and immunities upon a juvenile. There-

fore, a statutory procedure whereby a court may determine to deny such benefits to a juvenile is critically important and is overlain with certain fundamental constitutional limitations, 383 U.S. 1. c. 557, 86 S. Ct. 1. c. 1055:

> [W]e conclude that, as a condition to a valid waiver order, petitioner was entitled to a hearing, including access by his counsel to the social records and probation or similar reports which presumably are considered by the court, *and to a statement of reasons for the Juvenile Court's decision.* We believe that this result is required by the statute read in the context of constitutional principles relating to due process and the assistance of counsel. (Emphasis supplied.)

In re Gault, *supra,* made it emphatically clear that the procedures applicable to a waiver hearing are governed by constitutional principles, 387 U.S. 1. c. 30, 87 S.Ct. 1. c. 1445:

> In Kent v. United States, supra, we stated that the Juvenile Court Judge's exercise of the power of the state as *parens patriae* was not unlimited. We said that "the admonition to function in a 'parental' relationship is not an invitation to procedural arbitrariness." With respect to the waiver by the Juvenile Court to the adult court of jurisdiction over an offense committed by a youth, we said that "there is no place in our system of law for reaching a result of such tremendous consequences without ceremony —without hearing, without effective assistance of counsel, *without a statement of reasons."*
>
> .　.　.　.　.　.
>
> We reiterate this view, here in connection with a juvenile court adjudication of "delinquency", as a requirement which is part of the Due Process Clause of the Fourteenth Amendment. (Emphasis supplied.)

Decisions of the United States Court of Appeals have uniformly acknowledged

*Kent* as a declaration of constitutional principle for waiver hearings, including the due process requirement that the order of waiver contain an adequate statement of reasons for the decision of the court.[3]

The Supreme Court of Missouri has also understood it the purpose of *Kent* and Gault "to elevate to the status of constitutional protection the right to a hearing on waiver of jurisdiction, the right to representation at such hearing and the right to a statement of the court's reasons for waiving jurisdiction". Jefferson v. State, 442 S.W.2d 6, 11 [6] (Mo.1969); Coney v. State, *supra*.

 The record before us indicates that the waiver proceeding under § 211.071 was conducted by the juvenile court with all scrupulous regard for the constitutional requirements of notice, hearing, assistance of counsel for the juvenile, and access by counsel to the reports of investigation made in pursuance of statute. However, one failing appears. The order of waiver that "the petitions here . . be dismissed and that said child T..J..H.. be prosecuted under the general law" is completely devoid of any statement of reasons for the court's critical decision to relinquish jurisdiction over the child and must be declared invalid. Although *Kent* "does not specify any particular form or require detailed findings of fact" (Coney v. State, *supra*), the order of waiver "must set forth the basis for the order with sufficient specificity to permit meaningful review". Kent v. United States, *supra*, 383 U.S. 1. c. 561, 86 S.Ct. 1. c. 1057 [19]. The possibility of an effective review, where review is al-

lowed, is an inherent incident of due process of law.

 The decisions of the Missouri Supreme Court which expound the explicit statutory standard for waiver also recognize other clear and intelligible principles implied from that standard by which litigants and juvenile courts may be guided in determining when a juvenile is no longer a proper subject to be dealt with under the juvenile act. A juvenile court might reasonably exercise its discretion to relinquish jurisdiction over a child when, from the totality of circumstances, it appears: 1) the child's "age, maturity, experience and development" are such as to require prosecution under the general law (Coney v. State, *supra*), 2) the nature and seriousness of the child's conduct constitutes a threat to the community (State ex rel. Arbeiter v. Reagan, *supra*, 427 S.W.2d 1. c. 377 [4]; Coney v. State, *supra*), 3) the conduct was committed in a violent and vicious manner (Coney v. State, *supra*) [4], 4) there is reasonable likelihood that like future conduct will not be deterred by continuing the child under the "care, protection and discipline" of the juvenile law process (State v. Williams, *supra*, 473 S.W.2d 1. c. 384). We understand these decisions to mean that any factor which tends to predict the suitability or unsuitability of the juvenile law process for rehabilitation of the child is relevant to the determination of whether he is a proper subject to be dealt with under that law.

 We have searched the transcript of the waiver proceedings, but in vain, for some expression by the court of the basis

3. United States v. Tate, 151 U.S.App.D.C. 261, 466 F.2d 432, 433[1] (1972); Heryford v. Parker, 396 F.2d 393, 396[1–6] (10th Cir. 1968); Kemplen v. Maryland, 428 F.2d 169, 172 (4th Cir. 1970); United States ex rel. Turner v. Rundle, 438 F.2d 839, 841[1] (3rd Cir. 1971). See also, Broadway v. Beto, 338 F.Supp. 827, 833[1] (N.D.Tex.1971); Miller v. Quatsoe, 332 F.Supp. 1269, 1272[1] (E.D.Wis.1971); Hegwood v. Kindrick, 264 F.Supp. 720, 725 (S.D.Tex.1967).

4. Dictum in *Coney* suggests that in the circumstances of that case an order of waiver based upon express findings that a nearly 17 year old boy charged with acts of rape, murder and robbery was not a proper subject to be dealt with under the juvenile law "for the reason of his age, maturity, experience and development" satisfies the requirements of Kent."

for the order relinquishing jurisdiction. A reviewing court will not be remitted to the assumption that a juvenile court which has not expressed the basis for the order of waiver has found the facts necessary to such a judgment. The order of waiver was ineffective to divest the juvenile court of the exclusive jurisdiction over relator under the juvenile law or to invest respondent with jurisdiction over relator under the general law.

We consider and decide also the remaining significant jurisdictional question presented. Relator contends that the order of waiver of the juvenile court is void and cannot confer jurisdiction upon respondent because the motion of the juvenile officer set forth no facts constituting the grounds upon which the court could find that the juvenile was not a proper subject to be dealt with under the juvenile law. It is relator's position that the principles announced in *Kent* and *Gault, supra,* dictate that prior to the waiver hearing a juvenile be given notice sufficient to comply with the requirements of due process of law. Although *Kent* does not specifically address itself to the matter of notice preceding the waiver stage of the juvenile process, it does make clear that the procedures followed must adhere to the minimum essentials of due process and fair treatment. The courts which have considered the question have held with near unanimity that due process timely notice, apprising the juvenile, his parents and counsel of the *purpose* of such a hearing.[5]

 The pleading which commenced the waiver hearing against relator announced its purpose conspicuously: "MOTION FOR ORDER TERMINATING FURTHER PROCEEDINGS IN JUVENILE COURT AND TRANSFER-

RING JURISDICTION OF T..J..H.. FOR PROSECUTION UNDER THE GENERAL LAW PURSUANT TO SECTION 211.071, REVISED STATUTES OF MISSOURI, 1969." The body of the motion alleged conduct amounting to the commission of the felonies of possession of marijuana and sale of marijuana [6] and alleged further that "said minor is not a proper subject to be dealt with under . . . (the juvenile law), as more fully expressed in prior pleadings and petitions herein." The prior petitions filed in the juvenile court, and incorporated by reference into the motion, also alleged against the juvenile conduct amounting to the offenses of possession and sale of marijuana. While we conclude, as does relator, that notice sufficient to satisfy the requirements of due process must precede the waiver hearing, we conclude also that such notice as was actually given here, apprising him of the hearing and its purpose, was sufficient. The notice informed relator of the conduct which suggests his unsuitability for the juvenile process, the nature of the hearing and its purpose. This information, when considered with relator's right of access to the investigative file, fully accorded, made available to relator every fact which could enter into the juvenile court's determination.

We have determined that juvenile relator is not properly before respondent magistrate. It thus becomes the duty of respondent magistrate to transfer the custody of relator, forthwith and directly, to the Juvenile Court of Clay County, which retains exclusive jurisdiction over relator under the juvenile law. § 211.061(2). It is so ordered.

Respondent's motion to dismiss proceedings is denied. Our preliminary rule is

---

5. See, State v. Halverson, 192 N.W.2d 765, 769 (Iowa 1971); James v. Cox, 323 F.Supp. 15, 20[3] (E.D.Va.1971); Reed v. State, 125 Ga.App. 568, 188 S.E. 2d 392, 393[1]; Commonwealth v. Nole, 448 Pa. 62, 292 A.2d 331, 333[4]; L. v. Superior Court of Los Angeles County, 7

Cal.3d 592, 102 Cal.Rptr. 850, 498 P.2d 1098, 1102[5, 6] (banc 1972).

6. At the time of the waiver proceeding, § 195.200 had not yet been amended and the conduct alleged against relator was punishable as felonies, if he were to be proceeded against criminally.

made absolute and final judgment in prohibition is entered against respondent magistrate.

DIXON, C. J., and WASSERSTROM, J., concur.

PRITCHARD, J., dissents in separate Dissenting Opinion filed in which SWOFFORD, J., concurs transferring cause to the Supreme Court.

PRITCHARD, Judge (dissenting).

The principal opinion, in which the preliminary rule in prohibition is made absolute as to respondent magistrate, apparently proceeds upon the basis that the magistrate had no jurisdiction to proceed with a preliminary hearing upon complaints filed alleging felony offenses by relator. This conclusion is derived from relator's contention that a prior order of the juvenile court of Clay County, Missouri, made after a hearing with counsel present for relator, relinquishing jurisdiction over relator, did not state or recite the reasons therefor.

The principal opinion relies heavily upon Kent v. United States, 383 U.S. 541, 86 S. Ct. 1045, 16 L.Ed.2d 84 (1966). That case, although emphasizing "the basic requirements of due process and fairness" turned upon the language of the District of Columbia statute providing for "full investigation" prior to waiver of jurisdiction over a juvenile and order for trial under regular procedures in felony cases. In re Gault, 387 U.S. 1, 12, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). Kent may of course be distinguished from the case here upon its extraordinary facts, which are these: Kent was apprehended by the police for housebreaking, robbery and rape, and in an interrogation of about 7 hours by them, he admitted his involvement in the offense. His mother retained counsel the next day, and counsel made it known to the Social Service Director of the Juvenile Court that he intended to oppose waiver. While Kent was being detained in the Receiving Home,

his counsel arranged for his examination by two psychiatrists and a psychologist. Counsel thereafter filed a motion for a hearing on the question of waiver, along with an affidavit of a psychiatrist certifying that Kent was "a victim of severe psychopathology," and recommending his hospitalization for psychiatric observation. Counsel, in support of the motion, offered to prove that if Kent were given adequate hospital treatment he would be a suitable subject for rehabilitation. Counsel moved also for access to the Social Service file relating to Kent, representing that it was essential to his providing him with effective assistance of counsel. "The Juvenile Court judge did not rule on these motions. He held no hearing. He did not confer with petitioner or petitioner's parents or petitioner's counsel. He entered an order reciting that after 'full investigation, I do hereby waive' jurisdiction of petitioner and directing that he be 'held for trial for [the alleged] offenses under the regular procedure of the U. S. District Court for the District of Columbia.' He made no findings. He did not recite any reason for the waiver. He made no reference to the motions filed by petitioner's counsel." [383 U.S. 546, 86 S.Ct. 1049] There was additionally a presumption that the Juvenile Court judge had received and considered recommendations of his staff prior to the order, the reports being later received by the District Court, and both the reports referred to Kent's rapid deterioration of personality structure and the possibility of mental illness. The court did say [383 U. S. 561, 86 S.Ct. 1057], "Meaningful review requires that the reviewing court should review. It should not be remitted to assumptions. It must have before it a statement of the reasons motivating the waiver including, of course, a statement of the relevant facts. It may not 'assume' that there are adequate reasons, nor may it merely assume that 'full investigation' has been made. Accordingly, we hold that it is incumbent upon the Juvenile Court to accompany its waiver order with a statement of the reasons or considerations therefor.

We do not read the statute as requiring that this statement must be formal or that it should necessarily include conventional findings of fact. But the statement should be sufficient to demonstrate that the statutory requirement of 'full investigation' has been met; and that the question has received the careful consideration of the Juvenile Court; and it must set forth the basis for the order with sufficient specificity to permit meaningful review." The court went on to observe that under Black v. United States, 122 U.S.App.D.C. 393, 355 F.2d 104 (1965), the child is entitled to counsel (with opportunity to function) in connection with a waiver proceedings; and under Watkins v. United States, 119 U.S. App.D.C. 409, 343 F.2d 278 (1964), counsel is entitled to see the child's social records. It should be here observed that even if a juvenile court should state "reasons" for the order of waiver of its jurisdiction, if the evidentiary hearing, if accorded, failed to reveal a factual basis for the waiver, the order probably could not be sustained on review.

In contrast to Kent the principal opinion even recognizes that "the waiver proceeding under Sec. 211.071 was conducted by the juvenile court with all scrupulous regard for the constitutional requirements of notice, hearing, assistance of counsel for the juvenile, and access by counsel to the reports of investigation made in pursuance of statute." I do not agree, however, that the transcript of the waiver proceedings does not reveal "some expression by the court of the basis for the order relinquishing jurisdiction." Even the Juvenile officer's motion, by further contrast, for an order terminating further proceedings and to transfer jurisdiction of relator for prosecution under the general law pursuant to Sec. 211.071 alleges these felonies: Possession or control of a quantity of marijuana on or about May 13, 1971; Sale of a quantity of marijuana on or about April 3, 1971; and possession of a quantity of Lysergic Acid Diethylamide (LSD), on or about May 20, 1971. It is also alleged

"that the said minor is not a proper subject to be dealt with under the provisions of Section 211.011 to 211.431, Revised Statutes of Missouri, 1969, all as more fully expressed in prior pleadings and petitions herein." At the times alleged these offenses were felonies under Chapter 195, RSMo 1969. Sec. 211.071 provides that in the *discretion* of the judge of the juvenile court where a petition shows an offense which would be a felony if committed by an adult, "the petition may be dismissed and such child or minor may be prosecuted under the general law, whenever the judge after receiving the report of investigation required by sections 211.011 to 211.431 and hearing evidence finds that such child or minor is not a proper subject to be dealt with under the provisions of sections 211.-011 to 211.431."

The record entry of the juvenile court on May 27, 1971, recites that relator, his natural mother, and Richard J. Habiger, his attorney, were present, and announced ready on the juvenile officer's motion for order terminating jurisdiction and transfer for prosecution under the general law; and "Now attorney for said juvenile granted time to examine reports to be introduced in evidence. Whereupon, said motion is taken up by the court, evidence is heard and the court doth find: * * *." Jurisdiction over the child in Clay County, and the fact that he was under the age of 17 years, having been born July 4, 1954 [showing at the time of hearing that relator was 16 years, 10 months and 23 days old], were found. Relator's objection to dismissal of the petitions and certification was overruled, and the juvenile officer's motion was sustained, the petitions in juvenile court were dismissed, and relator was ordered prosecuted under general law. Thereafter, "Complaints" in Felony Case were filed in the Magistrate Court. The first is for the *sale* of a quantity of marijuana, which is still a felony offense under Sec. 195.200, subd. 1(1), unless under Subs. 1(1)(c) there is a delivery of less than 25 grams for no remuneration on a

first offense. The second complaint is for the possession of a quantity of marijuana, now a misdemeanor under Sec. 195.200, subs. 1(1)(a), for a first offense of possession of less than 35 grams of marijuana. Since there is no way of knowing whether the complaints will be amended, or what the evidence will be if the prosecution of relator as an adult proceeds, no expression of opinion is now made as to the effect, or retroactive effect, of the statute, as amended in 1971, after relator was ordered prosecuted under general law.

The transcript of the record in juvenile court shows these facts: Relator was picked up and detained on May 20, 1971, on a petition in juvenile court for selling marijuana on April 13, 1971, and possession of LSD on May 20, 1971. On May 10, 1967, relator was first referred to the Juvenile Office for vandalism of the Goodyear Store at 2021 Swift, North Kansas City. The second referral was on December 18, for taking light bulbs from a decorated Christmas tree. His third referral was on August 13, 1969, for disorderly conduct including drinking as a minor. His fourth referral was on August 29, 1969, for drinking and being in possession of liquor. On these occasions relator was placed on an informal adjustment program which was agreed to by him and his parents. Even while he was on a program of adjustment relator continued to involve himself in difficulty. "Informal adjustment" is a program set up with rules and regulations similar to official probation although it is not handled officially by the juvenile judge. A child is required to make regular once-a-month visits to the Juvenile Office, and relator always kept his visits.

On the May 20th matter, Deputy Juvenile Officer Glenn Young recommended that relator be made a ward of the court, placed on probation and returned to his parents' home. [See In Re G_____ D_____ G_____, 485 S.W.2d 449, 453 [3] (Mo.App. 1972), noting that the court is not required to follow the recommendation of the juvenile officer.] Young did not contact any boys' homes for possible placement because of his recommendation. "Q. What went into a determination of deciding to present a motion to the Court to Certify? What is your basis for asking for a certification? A. The Seriousness involved in his offenses. Q. Is there anything else? A. Not that I can think of right now. * * * Q. In your opinion, would Tom benefit from further care and treatment under juvenile process? A. I do not think so. Q. How do you arrive at that conclusion? A. In the past he has exhibited that he is not capable of following rules and regulations, for one. * * * Q. Is there anything else that went into your consideration leading to your determination that he would not benefit by further care and treatment under the juvenile process? A. Well, I didn't think that we could benefit him in the juvenile office. I thought about Boonville, or the Training School for Boys; and I did make contact, and found the average age of the juveniles at Boonville is approximately 15.8 years. Tom will be seventeen on July 4th of this year, and so he is quite a bit older than the boys at Boonville, * * *. THE WITNESS: I would also tend to say that the Training school is overly populated, and that Tom would not—in my mind, Tom would not be able to be given the proper supervision or the adequate aid that would be required to help Tom."

James Edward Button, a supervisor-caseworker at the Boonville Training School for Boys, testified that it had a population of 282 there, 28 at Cuivre River Park Camp, 30 at Watkins Mill Park Camp, and 75 at the Poplar Bluff Youth Center. The recommended capacity at Boonville is 150, and the average age of boys is 15.8. There has been very little success with boys who have been charged with narcotics violations, except for one limited success in transferring [them] to the State Hospital in St. Louis. He would not think the chances for progress were great for a boy approximately 17 years old, charged with

narcotics violations and a history of being in trouble. On cross-examination Button testified that there are a few boys at Boonville 17 years old, and they may stay until they are 18. The average length of stay there is 7.7 months, and because of over-population some boys are forced to be moved out at an early date. Some children benefit and some do not by going to Boonville.

Mrs. Helen Frye, Clay County Juvenile Officer, testified that Clay County does not have "structured environment" for juveniles to which they can be referred by the court. There was not any detention facility (at the time) for boys other than the County jail. On cross-examination, Mrs. Frye testified that it would not be her recommendation to send a boy such as relator to such a facility "Because of the seriousness of the offenses * * *— since we feel that the Training School cannot handle him. Q. I gather, then, that the seriousness of the offenses involved here is your consideration in arriving at the determination to file a motion in this court to certify a lad of the advanced age —A. He is not yet seventeen years of age. There were many things taken into consideration. Q. What else was taken into consideration? A. I think Mr. Young covered it pretty well. His age; his—well, I refer you to the Juvenile Officer's Report. It covers it pretty well. Q. I don't believe there's much of anything in there that indicates—A. His past referrals; his age; whether or not we felt the Training School could handle this boy;—." As to whether relator was beyond rehabilitation, or beyond the services that can be offered by the Clay County Juvenile office, Mrs. Frye testified that the court made that decision, "The Juvenile Officer feels that this action is appropriate, or the motion wouldn't have been filed." The matter of rehabilitating relator "so as to get him off of drugs, if he were in fact using them" would be a matter of decision of another court, if there were certification. Mrs. Frye did not know whether relator

could be rehabilitated. "It would depend on the individual, as Mr. Young stated."

The relator's school records were objected to and were not admitted in evidence. In the direct examination of relator's mother, however, it was brought out without objection that he has had problems in school. "A. Mostly not going to class. On this modular scheduling problem, he evidently goes to cafeteria instead of going to class." He was not mature enough to realize he had to be there at a certain time. Evidently he doesn't take responsibility well enough. He would demonstrate immaturity in poor judgment, probably following someone he knows is doing wrong. He was caught smoking and suspended for it from school. On cross-examination, she testified he was suspended four times, 10 days total. He had 36 absences from school, and failed everything in academic schooling.

At the close of the evidence counsel for the Juvenile Officer and for relator argued extensively their positions on the motion to certify relator. Relator's counsel argued that every possible means and resource of the juvenile court had not been exhausted, and that there must be evidence of whether the juvenile would benefit from further care and treatment of the court. Counsel for the Juvenile Officer argued that relator has shown time and again that he repeats his violations. The school authorities had no better success in giving him adjustment than did the Juvenile Officer in giving him informal adjustment. Adult facilities are better than juvenile court for narcotics offenses, serious offenses which present a danger to society and to the boy.

Upon the issue of whether relator should have been retained in juvenile court for further attempted rehabilitation, or whether the petitions should be dismissed in order that he be tried as an adult, the foregoing evidence supports the juvenile court's action in these ultimate respects: Relator's four referrals show that he was not responding to treatment in his own

home by way of informal adjustment. His poor performance in school shows that he could not conform his conduct to the standards of the school. Because of over-population, shortness of stay, and relator's age above the average of the Training School for Boys, commitment to that institution would be ineffective, especially in view of its poor experience in treating boys who had narcotics violations—that relator's chances for progress, because of his age and the narcotics violations, were not great, according to Mr. Button. There were no facilities for treating one in a "structured environment" in Clay Clounty. The offenses alleged, being felonies, are serious. The juvenile court's exercise of discretion as permitted by Sec. 211.071 is supported by the evidence. There is no need for the reviewing court to "be remitted to assumptions" in this case. "The basic requirements of due process and fairness" are here satisfied. In such a case the findings or reasons, being present in evidence, must be deemed to have been made in accordance with the result reached. See Rule 73.01(b) providing for that treatment of a court-tried case, and the comparable Criminal Rule 26.01(c) for the same treatment in jury waived criminal trials. And see the analogous holding in State v. Blackwell, 459 S.W.2d 268, 272 [3] (Banc Mo.1970), that a remand for specific findings is no longer required as to the applicability of the Second Offender Act where there is sufficient evidence in the record on that issue. See also Oliver v. Fisher, 430 S.W.2d 611 (Mo.App.1968), holding that the reasons which the court had in mind when the case was decided are not determinative if the judgment was correct on any theory. In this connection it is interesting to speculate what the Supreme Court in Kent would have done by way of granting certiorari, if the "basic requirements of due process and fairness" were shown by the record to have been accorded Kent, i. e., counsel's access to the Social Service files *and a hearing resulting in evidence sufficient to support the transfer,*

with the only thing lacking being a recitation in the order of reasons for the waiver of jurisdiction. As demonstrated above, on its facts, this case is far removed and sharply contrasted to the facts in Kent, hence there is no real basis to cause the juvenile court to reassume jurisdiction over relator because it did not go through the formality of stating "reasons" for its action.

It is apparent that no one was misled by these proceedings wherein the seriousness of the offense (a fact to be considered) and the lack of facilities locally as in the state was in evidence, together with a probable lack of success in rehabilitating relator by further attempted treatment at the juvenile court level.

There is a further reason why prohibition against respondent magistrate should not lie. If there existed an insufficiency of evidence to support dismissal of the petitions and order for transfer for prosecution under the general law, that fact could not support issuance of the writ because of any excess of exercise of jurisdiction. Such action could only be an abuse of discretion correctible upon appeal. The majority of the court in In re T. J. H., 479 S. W.2d 433, 435 (Banc, Mo.1972), held that remedy to be available, "[T]he exclusive method of reviewing the Juvenile Court's waiver order was a motion to dismiss the indictment in the District Court." The remedy by appeal is present; it must be deemed to be an adequate remedy, a matter which precludes the issuance of a writ of prohibition. It is no answer to say, as does the principal opinion as to the effect of In re T. J. H., "In dismissing that appeal, the Supreme Court neither identified the legal basis asserted for the appeal, nor ruled it, nor precluded resort by the appellant (this relator) to extraordinary remedy," the only basis set forth in the principal opinion for the issuance of the writ.

For the foregoing reasons I believe that the preliminary rule in prohibition was im-

providently granted and I therefore dissent, and I would quash the preliminary rule.

In participating in this case and because of the foregoing dissent, in accordance with the provisions of Art. V, Sec. 10, Const.Mo.1970 (effective Jan. 1, 1972), I hereby certify this case to the Supreme Court because of conflict with the opinion, In re T. J. H., 479 S.W.2d 433 (Banc, Mo. 1972), as to whether prohibition should be available at all under the factual situation presented because of the remedy of appeal to circuit court (and thereafter) being declared to be available. Furthermore, the question of whether prohibition may lie in this case may have the effect of nullifying the en banc decision of In re T. J. H.

SWOFFORD, J., concurs in dissenting opinion of PRITCHARD, J.