Allen L. BUTCHER, Appellant,

v.

Hiram H. MAIN, Jr., Respondent.

No. 52754.

Supreme Court of Missouri,
Division No. 1.

April 8, 1968.

Sherman Landau, St. Louis, for appellant.

Carter, Fitzsimmons & Brinker, Paul E. Fitzsimmons, Clayton, for respondent Main.

HIGGINS, Commissioner.

Action for $27,500 damages for loss of services and consortium and for medical expenses as a result of injuries sustained by plaintiff's wife in an automobile collision. Plaintiff appeals from verdict and judgment for defendant.

The collision occurred about 3:00 p. m., June 18, 1960, on U.S. Highway 66 bypass, a

north-south highway of four lanes, two for traffic proceeding in each direction. Big Bend Boulevard is an east-west road intersecting Highway 66 just south of the collision scene.

Four automobiles were involved in this casualty, all being northbound in the northbound lane immediately adjacent to the center line of Highway 66. According to statements taken by the investigating officer, Olon O'Connor, driver of the lead automobile, stopped his automobile at a point about 200 feet north of Big Bend in order to make a left turn; Madeline Politte Ratchford, next in line, came over the hill at the intersection, saw Mr. O'Connor stop but could not stop, and struck the rear of the O'Connor automobile; Harryetta Butcher, plaintiff's wife, came through the intersection, saw the cars ahead stopping, started slowing her own car, and was struck in the rear by an automobile driven by defendant Main. Mrs. Butcher also collided with the rear of the Ratchford automobile. Defendant came through the intersection and the Butcher car "stopped in front of me. I applied my brakes but hit her." Trooper John J. McCue testified from these statements and his examination of physical evidence at the scene that there were no skid marks; that car No. 1 (O'Connor) stopped, waiting to make a left turn off Highway 66 approximately 200 feet north of Big Bend, and was struck in the rear by car No. 2 (Ratchford); that car No. 2 was struck in the rear by car No. 3 (Butcher) and, as car No. 3 was stopping, car No. 4 (Main) struck the rear of car No. 3, forcing a chain reaction effect of cars No. 3 with No. 2 and into No. 1. A northbound motorist, when south of Big Bend, can see 200 feet north of the intersection. None of the occupants of the cars complained to the trooper of injuries, and all four vehicles were driven from the scene.

Appellant contends first that the court erred in denying his motion for directed verdict on the issue of liability because the same collision was in Butcher v. O'Connor, Mo., 401 S.W.2d 490, where, when plaintiff attempted to charge O'Connor, Ratchford, and Main with liability, the court said "that the proximate cause of her (Mrs. Butcher's) injuries is the fact that defendant Main's car collided with the rear end of her automobile." 401 S.W.2d 1.c. 493[1]. He argues "such ruling * * * is similarly controlling in this present case."

Butcher v. O'Connor, supra, was remanded generally for a new trial to plaintiff against defendant Main without any direction. All issues, including liability, were thus open issues because the former opinion "became and, so far as the facts are the same, remained 'the law of the case,' but it is not as to all issues 'res adjudicata.' * * 'The law of the case' applies where a general principle of law is declared as applicable to the facts of the case. If it is remanded generally all issues are open to consideration on a new trial. The pleadings may be amended or new and controlling facts produced. Often a second appeal presents a totally different case from that appearing on the first appeal." Creason v. Harding, 344 Mo. 452, 126 S.W.2d 1179, 1183[1].

Appellant charges the court with error "in rejecting the testimony of the doctors (McCall, Hogencamp, Rush, Stein, and Rosenberg) who treated Mrs. Butcher for the injuries sustained in the collision of June 18, 1960." He contends there was no proper basis "* * * for excluding the testimony of the physicians who treated her and had personal knowledge of her injuries and physical conditions." He cites Huffman v. Terminal Railroad Ass'n of St. Louis, Mo., 281 S.W.2d 863, 871[10, 11]: "A physician, in stating his expert opinion on a patient's condition, may testify to what the patient said (an exception to the hearsay rule) concerning his present, existing symptoms and complaints. However, he may not base his opinion upon or testify to statements of the patient with respect to past physical conditions, circumstances surrounding the injury, or the manner in which the injury was received * * *. (And where) the 'history'

of pain which the doctor stated as having been related by plaintiff to him was otherwise in evidence * * * objection that 'history' of previous conditions of pain was prejudicially permitted as the basis in part of the physician's opinion must fall."

There is, of course, no quarrel with this rule, but appellant is beyond help from it because the record fails to show sufficient foundation for the admission of evidence offered through his doctors, and the judge is not shown, therefore, to be guilty of an abuse of discretion in this respect.

■ The admission or exclusion of expert opinion testimony is a matter within the discretion of the trial court, Eickmann v. St. Louis Public Service Co., 363 Mo. 651, 253 S.W.2d 122, 130[1]; and a doctor's opinion, like that of any expert, is in the nature of a conclusion of fact, but it must have a substantial basis in the facts actually established and it cannot be invoked to establish the facts, Craddock v. Greenberg Mercantile, Inc., Mo., 297 S.W.2d 541, 548[9].

Plaintiff was not in the car with his wife and no other witness was offered to show how she may have been injured, if so, in the collision. Mrs. Butcher did not testify in plaintiff's case prior to the offer of any of the doctors' testimony and, after closing, plaintiff reopened his case to read from Mrs. Butcher's deposition "in view of the fact that we felt it would be better to have this testimony before the jury; otherwise there might be a reflection what her testimony would have been if we had produced her. It is limited to that."

■ The reopening was, perhaps, not intended to be limited, but if the ruling was correct at the time it was made the trial court is not to be convicted of error because subsequently there was other testimony which might have resulted in the different ruling if it had been before the court when the ruling in question was made. Gough v. General Box Co., Mo., 302 S.W.2d 884, 888[6].

■ Dr. McCall testified that he saw Mrs. Butcher June 20, 1960, and diagnosed a cervical sprain or strain of the neck. He saw her again on June 25, 1960, and on October 7, 1960, when she was improved to the extent he discharged her. All this was in evidence. Plaintiff also asked a lengthy hypothetical question of Dr. McCall seeking his opinion that her "injuries are etiological or causative factors in the woman's complaints." The question contained assumptions that Mrs. Butcher was struck from the rear "with such force as to violently jerk her head and neck backward and then forward, and that immediately following that she began to experience pains in her neck, etc." Under the foregoing authorities the objection to the question due to lack of foundation to support the quoted assumption was properly sustained, the quoted answer was properly stricken, and the offer of the quoted answer properly denied.

■ Dr. Rosenberg saw Mrs. Butcher December 14, 1960, and last saw her September 27, 1962. She complained to him of pain in her neck and headaches and he found "pain with tenderness palpated along the cervical vertebrae. * * * and pain was palpated also at the right third and fourth lumbar area." She had tenderness in the neck when last seen September 27, 1962. He also was asked to consider these symptoms and to express an opinion "whether or not they are permanent in nature." The objection that the "question would have to be predicated upon the testimony of Mrs. Butcher (not in evidence), and no foundation whether she had these pains for twenty-eight months or what the nature of them is" was, for the reasons previously indicated, properly sustained and the offered opinion on permanency where no observation over the 28-month period was shown was properly refused.

■ Dr. Gray first saw Mrs. Butcher March 20, 1964. She was complaining of pain in the upper back and his diagnosis was "neuritis of the dorsal segments." He saw her June 10, 1964, when her back pain con-

tinued, July 10, 1964, when her left arm and shoulder were hurting, and July 20, 1964, when no significant improvement was shown. Similar conditions existed August 17 and 24, 1964. He had X rays made of her back Otcober 22, 1964. Ultimately Dr. Gray was asked, considering "the period she has been under your care and taking into account the information * * * obtained from the hospital record, do you entertain any opinion as to the etiology, that is the origin of her present pain and disability?" Upon objection that there was no foundation "because she hasn't appeared in court or has been tied up or connected in what he found had any connection with this accident of 1960" the court refused the opinion that Mrs. Butcher had some "preexisting arthritis of the neck and back * * * also had some narrowing of a disc space in the * * * neck, which was aggravated by injury" and the subsequent offer to prove that Dr. Gray found a whiplash injury to the neck, a permanent condition. These rulings were also well within the court's discretion for the reasons previously stated. There was simply no foundation or connection laid between Mrs. Butcher's 1964 examination by Dr. Gray and the collision in 1960.

Appellant does not develop his contention with respect to testimony of Drs. Hogencamp, Rush, and Stein, and the transcript does not show refusal of any offer of testimony from them. The contention is thus without merit as to them also.

Appellant complains he was denied "the right to inquire of the jurors on voir dire examination whether any of them were engaged in the casualty insurance business, and also whether any juror was engaged in the general insurance agency business or was an agent for a casualty insurance company."

Prior to voir dire examination of the jury, plaintiff asked leave to ask five questions of the jury covering the above subjects. The proposed questions were identical to those offered by plaintiff for the court to ask of the jury in Kiernan v. Van Schaik, 3 Cir., 347 F.2d 775, 777. Defendant Main objected to the request, asserting "the cumulative effect of all five of those particular questions is an attempt to emphasize the question there is insurance involved." The court's ruling was to "permit a general question * * * whether they or any immediate member of their family have been or are employed by any corporation engaged in adjusting and investigating claims, * * * about the insurance, whether any of them have an interest in this insurance company, but your objection whether they have an interest in any insurance company will be sustained." The questions, if any, actually asked of the jury by plaintiff are not shown in the transcript, but the questions permitted the plaintiff by the court were proper questions for determining the connection, if any, prospective jurors might have had in the insurance company interested in the defense of the case on trial. Having offered to permit such inquiry, the court was well within the province of a trial judge to reasonably circumscribe the voir dire examination in that respect by limiting the number of questions and imposing other limits on the nature of the examination. Gooch v. Avsco, Inc., Mo., 340 S.W.2d 665, 667[2]. The federal trial judge erred in Kiernan v. Van Schaik, supra, not for refusing to ask the five tendered questions, but for refusing to make or permit any "reasonable inquiry whether prospective jurors are or have been connected with the business of investigating or paying accident claims, either as employees, agents or stockholders of insurance companies or claims agencies without suggesting the existence of insurance in the case." 347 F.2d 1.c. 782[11].

The court, at defendant's request, gave Instruction No. 4 (MAI 28.01 modified), which directed a verdict for defendant if the jury believed that Harryetta Butcher either failed to keep a careful lookout or was following too closely; that such conduct was negligent; and that such negligence directly caused or contributed to cause plain-

tiff's damages, if any. Appellant contends there was no competent evidence that plaintiff's wife either failed to keep a careful lookout or was following too closely. His only authority is Butcher v. O'Connor, supra, under which he argues, as in the first point, that this matter has already been settled.

■ This is the defendant's instruction, and the court, in determining if it is supported by substantial evidence, considers the evidence in the light most favorable to defendant. Dawley v. Hoy, Mo., 341 S.W.2d 111, 116[5].

■ Mrs. Butcher was under duty to keep a proper lookout for the presence of other vehicles such as that of Mrs. Ratchford in front of her, and to be aware of the situations and conditions of danger in order to take appropriate precautionary measures to avoid injury to herself and to others within an existing area of peril. Miller v. St. Louis Public Service Co., Mo., 389 S.W.2d 769, 771[2]. In addition to evidence previously stated, Mrs. Ratchford testified that her speed was 15 to 20 miles per hour; that after clearing the intersection she saw O'Connor when two or three car lengths ahead of her car either stopped or almost stopped. She applied brakes for an emergency stop but was unable to do so and ran into the rear end of O'Connor's automobile. Thereafter, Mrs. Butcher ran into the rear end of Mrs. Ratchford's automobile and Mrs. Ratchford did not hear the sound of any collision to her rear prior to being struck by Mrs. Butcher. Defendant Main was following Mrs. Butcher at a distance of about two car lengths when he noted she was making a sudden stop. He saw no brake lights or other stop signals on the Butcher automobile at this time. He heard a crash ahead of the Butcher automobile before he struck Mrs. Butcher. Mrs. Butcher (by deposition) was a car length or so behind Mrs. Ratchford when she first saw her. There was no reason she did not see her sooner. She did not know if Mrs. Ratchford was moving or stopped, nor did she know whether she was moving or stopped when struck by defendant. Under these circumstances, it would be for the jury to say whether, had Mrs. Butcher been keeping a careful lookout, she would or should have seen the Ratchford car and appreciated the situation sooner and in time to have slackened her speed as opposed to an abrupt stop, either by braking or prior collision, and thus have enabled defendant to stop in time to avoid colliding with Mrs. Butcher. Boehm v. St. Louis Public Service Co., Mo., 368 S.W.2d 361, 367[4].

■ Referring again to the evidence, and particularly to Mrs. Butcher's testimony that she was following Mrs. Ratchford by a car length or so at ten to fifteen miles per hour, and also to her lack of judgment on Mrs. Ratchford's speed when she started to slow, the jury also could reasonably infer that Mrs. Butcher was closer to Mrs. Ratchford than was safe and prudent and that such constituted negligence which directly caused the accident. Sundermeyer v. Lentz, Mo., 386 S.W.2d 16, 20[5].

Judgment affirmed.

HOUSER and WELBORN, CC., concur.

PER CURIAM:

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

All concur.